UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                              :
JOHN DOE #1,                      :
JOHN DOE #2,                      :          1:16-cr-588 (PAC)
                              :          1:21-cv-6174 (PAC)
              *Petitioners,*       :          1:21-cv-9042 (PAC)
      v.                        :
                              :
UNITED STATES OF AMERICA,    :        **OPINION & ORDER**
                              :
             *Respondent.*       :
                              :
-------------------------------------------------------x

      Petitioners John Doe #1 ("JD-1") and John Doe #2 ("JD-2") bring habeas corpus petitions

to vacate or correct their sentences pursuant 28 U.S.C § 2255. The Petitioners—father and son—

both contend they received ineffective assistance of counsel. They claim their attorneys failed to

correct a translation of a Spanish-language call that the Petitioners had in prison after they had

pled guilty. The Petitioners maintain the transcription was mischaracterized as a coded drug

conversation, and that they received harsher sentences than they otherwise would have because

the Court viewed them as faithless cooperators in a related trial. The Government opposes the

petitions. For the reasons set forth below, both Petitioners' claims for habeas relief are **DENIED.**

## BACKGROUND

      For a time, the Petitioners served as confidential informants for the United States Drug

Enforcement Administration ("DEA") in the agency's prosecution of several drug traffickers. JD-

1 "was a former member of the Sinaloa drug cartel" who, together with his son, JD-2, met with

Venezuelan drug traffickers at the DEA's request. *See United States v. Flores*, 945 F.3d 687, 697

(2d Cir. 2019). The Petitioners secretly recorded the meetings, and JD-1 subsequently testified against those Venezuelan defendants at their own criminal trial. *See id.*[1]

JD-1's testimony did not go exactly as planned. On cross-examination, it was revealed that "for several years during the time he operated as a DEA confidential informant, [JD-1] engaged in extensive unauthorized drug trafficking activities" himself—essentially double-dealing the DEA—and had lied to the agency about it. *Id.* at 711. JD-2 had done the same. The Petitioners had pled guilty for these crimes[2] just before the *Flores* trial.

There was more for JD-1. His cross-examination in the *Flores* trial also revealed that, even after they pled had guilty, father and son continued to communicate from prison with one another (and with others) about trafficking drugs. *Id.* JD-1 then put the cherry on top by denying, under oath, that those prison calls had taken place. *Id.* However, several of the Petitioners' prison calls were recorded, translated from Spanish to English, and transcribed for the trial. One of those transcripts—referred to as DX-534—is the focus of the Petitioners' current motion. When the audio recording of DX-534 was played for JD-1 on the stand, he confirmed his son had been discussing drug trafficking, noting that a third participant on the call was "talking about a situation where someone got him around 140 of that, those pills." *See* Trial Tr., *United States v. Flores*, No. 15-cr-765, ECF No. 149, at 962:24–963:3. "In light of these revelations, the government on [JD-1's] redirect examination, in the presence of the jury, terminated his cooperation agreement." *Flores*, 945 F.3d at 703.

---

[1] During the *Flores* trial, JD-1 used the protective pseudonym "Jose Santos-Pena," and JD-2 used the pseudonym "Jose Santos-Hernandez." *See* 945 F.3d at 696, 697.

[2] Both Petitioners pleaded guilty to conspiring to import controlled substances, in violation of 21 U.S.C. § 963; conspiring to distribute controlled substances, in violation of 21 U.S.C. § 846; and making false statements to the DEA, in violation of 18 U.S.C. § 1001. *See* JD-1's Presentence Investigation Report ("PSR") ¶¶ 2–4; JD-2's PSR ¶¶ 2–4.

JD-2 had his own problems in the *Flores* case. He did not testify at trial; he had already perjured himself at a suppression hearing. There, and at subsequent proffers, JD-2 revealed he and his father had brought a third person, "Paul"—apparently, another drug-trafficking associate—to several of the meetings with the Venezuelan defendants, without informing the DEA. JD-1 confirmed this version of events after being confronted by the Government. *See* Hearing Tr., *United States v. Flores*, No. 15-cr-765, ECF No. 80, at 390:1–394:17, 412:1–23.

After their attempted cooperation in the *Flores* trial, this Court sentenced the Petitioners. JD-1's sentencing guideline range called for 292 to 365 months imprisonment. *See* Sent. Tr. (May 15, 2018) at 45:19–24. JD-2's range called for 262 to 327 months. *Id.* at 49:8–13. In determining JD-1's sentence, the Court considered his cooperation with the Government in the *Flores* trial. *Id.* at 46:23–47:22. However, the Court also noted his extensive dishonesty, and how he "tr[ied] to take advantage of his cooperative status, getting paid for it and doing pretty much what he could get away with." *Id.* at 46:18–23. As for JD-2, the Court likewise found that he had committed "serious crime[s]," and that he was not eligible for safety valve relief[3] because he "did not live up to the terms of his cooperation agreement." *Id.* at 51:15–19. Accordingly, the Court sentenced both JD-1 and JD-2 to 12 years imprisonment, to be followed by the mandatory minimum five years supervised release. *See id.* at 47:23–48:6, 51:20–52:3. Both Petitioner's sentences were about half as long as their guidelines ranges.

---

[3] "Safety valve" relief allows a court to sentence a defendant below the mandatory minimum if he meets five criteria. *See* 18 U.S.C § 3553(f). Only one is relevant here: "the defendant provided the government, not later than the sentencing hearing, with all information and evidence concerning the offense known to him." *United States v. Holguin*, 436 F.3d 111, 115 (2d Cir. 2006) (citing 18 U.S.C § 3553(f)(5)).

The Petitioners appealed their sentences. *See United States v. Doe #1*, 802 F. App'x 655 (2d Cir. 2020). The Second Circuit upheld both sentences as reasonable[4] and noted this Court had departed "significantly" downwards from the guidelines ranges. *Id.* at 657. Additionally, the Second Circuit affirmed this Court's conclusion that JD-2 was ineligible for safety valve relief because of his continued dishonesty after his guilty plea. *Id.* at 658. The Second Circuit reasoned—despite JD-2's challenge to the accuracy of the DX-534 transcript—that this Court had not clearly erred when it interpreted the Petitioners' prison call as a coded discussion about drug trafficking. *Id.* However, the Second Circuit declined to review JD-2's ineffective assistance of counsel claim, concluding it lacked a complete record. *Id.*

JD-2 has now filed that claim in the form of a Section 2255 collateral attack. *See* Mot. to Vacate, ECF No. 34. He argues his counsel did not adequately represent him when they failed to obtain an accurate translation of DX-534, and if counsel had done so, the Court would have granted safety valve relief and sentenced him using a lower guidelines range. JD-1 filed his corresponding Section 2255 petition shortly afterwards. *See* Mot. to Vacate, ECF No. 43. Like his son, JD-1 maintains that if his counsel had obtained an accurate version of DX-534, the Court would have granted him an even greater downward variance, perhaps to the mandatory minimum.[5]

## DISCUSSION

## I.    Legal Standard for Habeas *Strickland* Claims

A prisoner in federal custody may petition a court to vacate or correct a sentence "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). To succeed

---

[4] The Second Circuit did remand for resentencing regarding the Petitioners' ability to pay a fine, *see Doe #1*, 802 F. App'x at 656, which is not at issue here.

[5] Unlike his son, JD-1 did not seek safety valve relief at sentencing, and his habeas motion does not contend that he would have been eligible.

under a Section 2255 claim, a petitioner cannot demonstrate simple error alone but instead must show a "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Hoskins*, 905 F.3d 97, 103 (2d Cir. 2018) (internal quotation omitted). The scope of Section 2255 review is limited to promote the judicial system's strong interest in the finality of criminal sentences. *See Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010).

The Petitioners contend they qualify under this exacting standard because they received ineffective assistance of counsel at sentencing. A criminal defendant is guaranteed the effective assistance of counsel under the Sixth Amendment. To prevail on a claim of ineffective assistance of counsel, the Petitioners must show (1) their attorneys' performance fell below an objective standard of reasonableness; and (2) they were prejudiced by this performance—that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 690, 694 (1984). The Court need not address both *Strickland* elements if the Petitioners make an inadequate showing on one. *Id.* at 697. "The standard of *Strickland* is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on [it]." *United States v. Nolan*, 956 F.3d 71, 79 (2d Cir. 2020) (internal quotations omitted) (alteration in original).

## II.   Failure to Secure a "Corrected" Version of DX-534 Created No *Strickland* Prejudice

Both Petitioners' *Strickland* claims center on DX-534, a transcript of a phone conversation they had in prison which was used to cross-examine JD-1 in the *Flores* trial. Having furnished a new translation of DX-534, they now contend the conversation was wrongly characterized as a coded drug conversation, when the Petitioners had actually talked about selling cars.

5

The Petitioners' claims fail on the second *Strickland* element.[6]   Given the extensive evidence of each Petitioner's lack of cooperation, counsel's decision not to request a "corrected" version of DX-534 did not create prejudice because it would not have affected the guidelines ranges or the facts the Court emphasized at sentencing.

To start, the Court does not find the "corrected" version of DX-534 credible.  The Second Circuit has already found—despite the Petitioners' contention, pressed again here—that this Court permissibly concluded DX-534 reflected a conversation about selling drugs, not cars:

> Although Doe #2 argues that the translation was not entirely accurate and that the conversation was discussing a car sale, the district court's interpretation was not clearly erroneous.   The recordings were played for Doe #1 during his cross-examination in a related trial, and Doe #1 confirmed that the individual was discussing pills.  Given that testimony, it was not clearly erroneous for the district court to interpret the transcript as a coded conversation about a drug transaction, rather than a car sale.

*Doe #1*, 802 F. App'x at 658.  Importantly, during his cross-examination, JD-1 listened to the *audio* recording of the call and confirmed his son had been speaking about pills.  *See* Trial Tr. at 962:21–963:3 (reflecting that the Spanish "Audiofile [was] played" before JD-1 answered questions).  Written translations of the recording—whether accurate or not—would not change what JD-1 heard from the audio itself.[7]

---

[6] Accordingly, the Court need not address, under the first *Strickland* element, whether it was unreasonable for counsel to fail to secure a "corrected" translation of DX-534.

[7] JD-1 argues he did not really understand the audio, and merely answered questions based on the transcript placed in front of him.  Yet he had no difficulty declining to endorse what was written in DX-534 when he disagreed with its accuracy.  For example, just a few questions after the "pills" colloquy, when he was asked whether his son had used the words "Big Brother" to signal they were being monitored, JD-1 demurred: "I didn't understand that."  *See* Trial Tr. at 963:22–964:3; *see also, e.g., id.* at 970:11–13 (JD-1 denying that another transcript, DX-532, had properly referenced "cash").

Moreover, JD-1 confirmed the code word "cars" was consistently used in other drug transactions, including during the Petitioners' informant meetings with the Venezuelan defendants. Indeed, on the *Flores* appeal, the Second Circuit rejected an argument that JD-1 had wrongly interpreted one of the Venezuelan defendant's statements that "I had some cars and I was working with some people over there from where you guys are from" as referencing airplanes used to transport drugs. *See Flores*, 945 F.3d at 709–10 (citation omitted). The Second Circuit explained that "individuals engaging in illicit activities rarely describe their transactions in an open or transparent manner and the government may call witnesses to provide insight into coded language through lay opinion testimony . . . ." *Id.* (quoting *United States v. Yannotti*, 541 F.3d 112, 126 (2d Cir. 2008)). This Court reasonably drew the same inference about DX-534.

The new version of DX-534 does not change the Court's conclusion that the Petitioners were talking about drug trafficking. The "corrections" still include many of the coded aspects of the conversation that so troubled the Court at sentencing. *See* JD-2's Reply Mem., ECF No. 58, Ex. A. Take, for example, references to being in "Big Brother": likely a coded warning from JD-2 that prison calls are recorded, made just after the pills/cars discussion. *Id.* at 37:29–36. And unless they moonlighted as owners of a car dealership, it would be a strange conversation indeed if the Petitioners were discussing such a large number of cars—"120" or "140" of them—in prison.[8] *Id.* at 34:8–24; *see also United States v. Velasquez*, 271 F.3d 364, 374 (2d Cir. 2001).

---

[8] The Petitioners have also suggested the number "140"—the number provided in their own translation—could refer to Mexican pesos used to buy a car. That theory is without merit. Under the current exchange rate, 140 pesos is about seven dollars: nowhere close to the value of even the clunkiest lemon. *See Norwegian Nature's Plus Nordic A/S v. Natural Organics, Inc.*, 78 F. Supp. 3d 556, 558 (E.D.N.Y. 2015) (taking judicial notice of a foreign currency exchange rate). To the extent that the Petitioners instead argue the number was 140,000 pesos, their own translation refutes their argument.

Yet even assuming DX-534 did not involve drug discussions, counsels' failure to correct the record did not prejudice the Petitioners. Rather, DX-534 would still be strong evidence of the Petitioners' status as faithless cooperators. The Petitioners were forbidden from communicating with each other in prison to prevent them from attempting to "get[] their stories straight about matters that were material to their anticipated testimony in the Flores case." JD-2's PSR at 20. They violated that requirement. Accordingly, at trial, JD-1 denied that he had spoken to his son in prison *at all*, not just about a particular subject. *See United States v. Flores*, No. S5 15 Cr. 765 (PAC), 2017 WL 1133430, at *6 (S.D.N.Y. Mar. 24, 2017) ("[T]here is no doubt that [JD-1] testified falsely at trial. The clearest instance of perjury was [JD-1]'s testimony that he did not communicate with his son, [JD-2], while they were in jail. . . . Recorded prison calls plainly showed that [JD-1] and [JD-2] communicated in jail."). A purportedly corrected transcript of the Petitioners' call would not change the fact that the call happened in the first place.

Finally, given their well-established pattern of dishonesty before DX-534 was even introduced, the Petitioners' sentences would have been the same even if the conversation transcribed in DX-534 really had been about cars. As to JD-1, he pled guilty to drug trafficking while lying to the DEA about it over several years. *See* JD-1's PSR ¶ 34. He perjured himself at the *Flores* trial. And he lied to the Internal Revenue Service by substantially underreporting the income he earned as an informant. *See id.* ¶ 85. Based on this dishonesty, the Government revoked its cooperation agreement with JD-1 and this Court denied his motion for specific performance of that agreement. *See* Sent. Tr. at 29:15–23. Despite JD-1's repeated dishonesty, the Court still departed downward significantly from the guidelines and sentenced him to 12 years in prison: just under half of his minimum guidelines range of 24.3 years, and only two years above the mandatory minimum the Court could impose.

JD-2 also faced no prejudice, regardless of DX-534. Although he was potentially safety valve eligible, his own pattern of dishonesty disqualified him. JD-2 had the burden of proving he met the safety valve criteria, including that he had provided "an exhaustive and truthful portrayal of his knowledge of his offense conduct and all related activity" to establish complete cooperation. *United States v. Beltre*, 562 F. App'x 15, 18 (2d Cir. 2014) (quoting *United States v. Nuzzo*, 385 F.3d 109, 119 n.25 (2d Cir. 2004)). "A court may, of course, consider the relevance of the prior perjury or other obstructive behavior in making a factual finding as to whether the defendant has made a complete and truthful proffer in compliance with § 3553(f)(5)." *United States v. Jeffers*, 329 F.3d 94, 100 (2d Cir. 2003).

The Court properly denied safety valve relief to JD-2. Although prior dishonesty did not automatically disqualify JD-2 from safety valve eligibility, *see id.* at 99–100, he downplays the role that his perjury and other obstructive behavior—even if fully admitted before sentencing—played in the Court's determination that he did not qualify. *See Betancourt v. United States*, No. 10-CR-905, 2019 WL 1953930, at *4 (S.D.N.Y. May 1, 2019) ("A previous lack of candor may damage a defendant's credibility and undermine his ability to prove to the court that that he has been fully truthful with the Government."); *cf. Nuzzo*, 385 F.3d at 118 ("We are unable to reconcile the District Court's assessment of [defendant's] lack of credibility and the long record of [his] untruthfulness with the fifth safety-valve criterion."). JD-2 needed to demonstrate full cooperation with the Government; instead, he perjured himself at the *Flores* suppression hearing about the meetings with the Venezuelan defendants—completely unrelated to DX-534 and the other calls in prison. He likewise threatened the integrity of the *Flores* case by repeatedly violating the baseline requirement that he not call his father pending their witness testimony. In short, the Court seriously doubts that JD-2 has been fully truthful with the Government, even after these falsehoods were

discovered. Therefore, because JD-2 would not qualify for safety valve relief, his counsel's decision not to fully pursue that relief did not prejudice him at sentencing.

**III.    John Doe #2's Sentence was Constitutionally Reasonable**

JD-2's original pro se petition also contends that his sentence is constitutionally unreasonable. His subsequent briefing, however, does not revisit this claim. Indeed, the Second Circuit has already rejected this argument and affirmed JD-2's sentence as substantively reasonable. *See Doe #1*, 802 F. App'x at 656–57. That conclusion has not changed.

In determining the reasonableness of a sentence, courts consider the totality of the circumstances, which includes the extent of variance from guidelines range. *See United States v. Rivernider*, 828 F.3d 91, 110–11 (2d Cir. 2016) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). Generally, it is "difficult to find that a below-Guidelines sentence is unreasonable." *United States v. Perez-Frias*, 636 F.3d 39, 43 (2d Cir. 2011).

As the sentencing transcript indicates, this Court considered a myriad of factors at JD-2's sentencing, including his attempted cooperation and his dishonesty. *See* Sent. Tr. at 51:13–24. His sentence of 12 years imprisonment was almost 10 years below the minimum guidelines recommendation. JD-2's sentence was reasonable and his habeas claim on this ground is denied.

## CONCLUSION

The Petitioners have not proven their counsel was ineffective at sentencing. Therefore, both JD-1 and JD-2's *Strickland* claims are **DENIED**. Additionally, JD-2's petition to vacate his sentence as constitutionally unreasonable is **DENIED**. Because Petitioners have not "made a substantial showing of the denial of a constitutional right," no certificate of appealability will issue. *See* 28 U.S.C. § 2253(c)(2).

The Clerk of Court is respectfully directed to close the motions at ECF numbers 34 and 43.

Dated: New York, New York            SO ORDERED
      September 8, 2022

                                        HONORABLE PAUL A. CROTTY
                                        United States District Judge